## Maynard's Adm'r v. Maynard

(Decided March 6, 1936.)

W. K. STEELE for appellant.

STRATTON & STEPHENSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The treatment we accorded to this case upon its last visit to this court (there being yet others) is contained in our opinion in the case of Maynard v. Maynard's Adm'r, 251 Ky. 246, 64 S. W. (2d) 567, 91 A. L. R. 697. The salient facts as therein shown are that Kentucky Maynard, before her marriage to appellee, A. J. Maynard, was the wife of a Mr. Music, who died in October, 1926. In February, 1927, she married A. J. Maynard and lived until December 20, of that year, dying childless and intestate, leaving as her heirs and distributees her surviving husband, Maynard, and some brothers and sisters and descendants of those who had died. The husband relinquished his right to qualify as her personal representative in favor of her nephew R. H. Sowards, who was appointed and qualified as such fiduciary. Mrs. Maynard's estate consisted mostly of personalty, some $65,000 of which was invested in

United States bonds, while other portions of it were represented by stock in banks, and she owned a number of notes evidencing indebtedness to her by various individuals. She also owned some landed estate, and all of her property in the aggregate amounted to as much as or more than $150,000. The appellant, as her personal representative, took charge of her affairs and made some settlements with the county court, but dissatisfaction arose among those entitled to the net proceeds of the estate, which was particularly true of the husband, since he was not paid his distributable share according to what he contended was his right thereto and he eventually filed or started this litigation by instituting an action for a settlement of the estate in which the personal representative was made a party defendant.

Orders of reference to the master commissioner were made and he filed some reports to which exceptions were taken, and there were divers and sundry rulings and orders of the court, but in which many matters were left unsettled because of unreadiness for that purpose. Finally a partial judgment, so to speak, was rendered and the appeals from which were before this court in the case referred to. It would be a useless, as well as profitless, task to set out in this opinion the matters and things involved on the former and last appeal of this case. We, therefore, deem it unnecessary to make specific reference to what was therein determind to any greater extent than will be necessary to determine the issues on this appeal. However, a reading of that opinion will demonstrate that we did not therein attempt to make and direct any specific settlement of the acts and doings of the personal representative further than to dispose of some contested items and to direct the court what should be done with them upon a future consideration of the case following the filing of the mandate from this court. We also in that opinion outlined and directed the legal principles that the court should follow in making a final and permanent settlement, and specifically directed that the parties be permitted to take evidence on certain issues relating to specified items of property with a view of determining the amount of commissions to which the personal representative was entitled, and which related chiefly to matters concerning the division of the United States bonds, and the bank stock.

Nothing was said in that opinion the one way or the other touching the right of the administrator to a claim against the estate for the amount of $1,750 which he filed with the commissioner nearly two years after his appointment as personal representative, and which he claimed was due him for services rendered to Mrs. Maynard in assisting her in looking after her estate for 250 days preceding her death, which he averred were worth $7 per day. So far as we have been able to ascertain from the record that claim, after being made out and filed with the commissioner, remained in the hands of that officer until after the filing of the mandate of this court, issued upon our opinion in the appeal, supra. During that time the commissioner took evidence upon the merits of the claim, including that given by the administrator, and to which no one seems to have objected, although he was clearly an incompetent witness under the provisions of section 606 of our Civil Code of Practice.

After the return of the case to the circuit court, and following the filing of the mandate from this court, the commissioner was ordered to and did file his transcript of the evidence so taken before him with reference to the administrator's personal claim, and in the same order it was stated that "the parties are permitted to introduce further proof before the court and upon filing said transcript of evidence the master commissioner will be relieved of further duties under said order of reference." The court then heard additional proof touching the claim, as well as upon some other contested issues not disposed of in our former opinion, and there was also filed certain stipulations in lieu of proof relating to other matters involved. The case was then submitted, followed by a judgment allowing the claim of the administrator, and which in turn was followed by a judgment fixing the amount due the administrator in accordance with the correct principles set forth in our former opinion, and from that judgment he prosecutes this appeal and the husband, A. J. Maynard, has obtained a cross-appeal in this court whereby he seeks a reversal of the judgment of the circuit court in allowing appellant's claim after crediting it by $100 that had been paid to him.

The judgment disallowed the items condemned in our former opinion, and, as far as we have been able

to ascertain from the very considerable record, it followed the directions we gave in that opinion in allowances made to the administrator, and we have not been convinced by learned counsel of any substantial departure therefrom. But he argues that in no event should the judgment appealed from affect any of the matters determined thereon except to the extent of one-half of the amounts involved, being the portion going to the husband, Maynard, because he insists our former opinion affirmed the judgment there involved as to all other heirs and distributees of the deceased, Kentucky Maynard. In the first place we have been unable to find wherein the judgment sought to be corrected by this appeal disturbed any of the matters that were so affirmed as to such other heirs and distributees; but, whether so or not, this appeal is not against any of them, and if they were unduly benefitted by the judgment appealed from, it is not questioned on this appeal, since the only appellee is the surviving husband, A. J. Maynard.

The proof heard following our mandate, and which was done pursuant to our former opinion, clearly showed the amount and kind of personal property owned by the decedent for distribution and the percentages of commission to which the administrator was entitled in making its distribution as outlined in our former opinion. It showed that on certain amounts of personal property going to Maynard the administrator received interest on time deposits thereof, made by him before paying Maynard his portion, and the judgment charged him with that interest in favor of Maynard, but where the property was of such nature and character that it could not be distributed in kind and had to be converted into cash, the administrator was allowed 5 per cent. on the total amount thereof, and which was in accord with our former opinion. Further elaboration would demonserate that no material departure was made therein from the directions contained in the opinion referred to, and we deem it an unnecessary consumption of time and a needless appropriation of space to further pursue the questions, and for which reason we are not inclined to disturb the judgment on the appeal of the administrator.

The cross-appeal by appellee, as we have stated, draws in question the propriety of the court's judg-

ment in allowing the claim presented by the personal representative. To begin with, a retrospect of the situation might be made. The record shows Mrs. Maynard to have been a woman of superior intelligence, with vastly more than the average business ability of others of her sex, and that the appellant was a favorite nephew whom she occasionally, at least, consulted with reference to her business matters. She confided in and relied upon him more or less, and he would on occasions render advice, but under conditions having the appearance of being entirely voluntary on his part. He testified that he consulted with a number of debtors concerning their obligations to her, but when called upon to name them they were few, and what was done by him was merely speaking to them about their overdue debts. We do not recall a single claim that he personally collected. He, in conjunction with his aunt, participated in the adjustment of some other business matters, one of which was the rescission of a sale of a lot to a bank in Pikeville, which she had made for the consideration of $10,000; but the bank became shaky and it clearly appeared that it would be unable to pay the almost entire deferred consideration and that it had concluded not to enlarge its building as originally contemplated. That matter was adjusted by a cancellation of that conveyance and having the title restored in Mrs. Maynard's name, or conveyed as she directed. The appellant accompanied Mr. Maynard on a trip to Florida to look after some business matters of Mrs. Maynard, but the husband paid the entire expense of that trip and which resulted only in selling a lot to a man whom Mrs. Maynard had previously suggested and with whom she had corresponded before the trip—the price, paid by a check, was sent to Mrs. Maynard, and on that trip Mr. Maynard paid the $100 to appellant with which the court credited his claim.

The testimony of appellant touching the services he rendered decedent as a foundation for his claim is vague and meager, and he is the only witness, notwithstanding his incompetency, who even intimates any fact or ground as a basis for the contractural claim that he made, and which the court allowed. Even his testimony on that point is short and by no means convincing. He was asked and answered:

"Q. How long after Mr. Music's death was it before she asked you to look after her business for her?

A. I believe it was that day or the day after. I was there during his sickness and after his death I was there constantly. She asked me to help her.

"Q. Have you any agreement with her as to what you were to be paid for your services? A. None whatever. She just said she would take care of me—that she would fix it up.

"Q. Ever have any settlement or ask for any settlement with her? A. No sir.

"Q. Did she ever say anything to you about what you were to have? A. No sir."

That is all the evidence of any contractual nature that we have been able to find in the entire record. The record discloses that decedent owned a piece of real estate known as "Turn Hole Farm" which she sold to the wife of appellant and a Mrs. Pauley for an exceedingly reduced sum while appellant was protecting her in the management of her property by his alleged aid and assistance. His wife later purchased the one-half interest of Mrs. Pauley and later realized a profit of something more than $5,000. There is nothing in the record to show that Mrs. Maynard was not aware of the extremely favorable nature of that contract toward the vendees, one of whom, as we have said, was appellant's wife. Other incidents and circumstances appear, clearly showing that in such actions and ways appellant was taken care of by his aunt, and that in that way she fulfilled what he says occurred at the time he began his assistance of her, although her estate had theretofore been managed by herself alone or by sometimes advising with her favorite nephew.

Moreover, it will be observed that for nearly a year following the alleged contract to the time of Mrs. Maynard's death appellant never mentioned the matter to her and never demanded any pay whatever for any of his alleged services, nor did he make claim against the estate until some twenty months after his qualification as representative thereof. He was a favorite nephew of the decedent and courts scrutinize such alleged contracts between parties so related after the death of one of them. The testimony introduced by appellee on the issue now under consideration tended to show the meagerness of the alleged services rendered

to Mrs. Maynard before her death, and upon which the claim is exclusively based; and the record portrays an inclination on the part of appellant to swell the amount of his credits by unauthorized claims, some of which are pointed out in our former opinion.

But independently of such considerations, it appeared in the parol proof taken since the filing of the mandate from this court following our opinion, supra, that appellant had theretofore, and pending the long period of this litigation, been paid the claim with a check of $2,500 purportedly in settlement of part earned commissions due him at the time it was issued, but which he now says embraced the contractual claim of $1,750 now being considered. He testified that before making such payment in that manner the court had allowed it and that it had also been approved by the master commissioner; but we have been unable to find such court conformations anywhere in the record, nor does counsel cite us to any portion thereof containing any such judgment or approval. If, however, it was done, then clearly appellant should not again be given credit for his asserted claim, even if it were a meritorious one and shown to be so by the evidence, but which we do not so conclude.

For the reasons stated, we have not gone into details in this opinion. To do so would make it almost interminable and could be of no practical service. This case appears to have been pending long enough. We discover no impropriety in the judgment, except as to the matter complained of on the cross-appeal. We feel that it is time that it should be terminated, since it and we appear to have arrived at the end of the row.

Wherefore, the judgment is affirmed on the original appeal, but on cross-appeal it is reversed, with directions to modify it in accordance with this opinion; the whole court sitting.